1

2

3

4          UNITED STATES DISTRICT COURT

5          NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREAS KNUTTEL, et al.,              Case No. 21-cv-02726-JST

8                    Plaintiffs,

9          v.                             **ORDER GRANTING MOTION TO
                                          DISMISS FOR IMPROPER VENUE
10   OMAZE, INC.,                         AND TRANSFERRING CASE**

11                   Defendant.           Re: ECF No. 14

12

13         Before the Court is Defendant Omaze, Inc.'s motion to dismiss for improper venue, or

14   transfer venue under 28 U.S.C. § 1404(a). ECF No. 14. Plaintiffs Andreas Knüttel, Matthew

15   Juranek, and Adriana Carlin oppose the motion. For the reasons below, the Court will grant the

16   motion to dismiss for improper venue and transfer this case to the Central District of California

17   under 28 U.S.C. § 1406(a).[1]

18   **I.      BACKGROUND**

19         Defendant Omaze is a Los Angeles-based for-profit company that partners with charities to

20   raise money online. Omaze solicits donations online in exchange for chances to win prizes, and

21   gives a portion of the money it receives to charity. Plaintiffs Knüttel, Juranek, and Carlin all made

22   donations to Omaze and now bring a putative class action alleging that Omaze has engaged in

23   deceptive and unfair business practices in how it runs and markets its online fundraising

24   campaigns, in violation of California law.

25         The parties dispute whether venue is proper in the Northern District of California.

26   Plaintiffs argue venue is proper because Omaze marketed and sold its products throughout

27   _____

28   [1] In light of this ruling, the Court does not reach Omaze's motion to transfer under 28 U.S.C.
     § 1404(a).

United States District Court
Northern District of California

1   California, including in the Northern District.  Plaintiffs further allege that one of the three

2   Plaintiffs – Knüttel – saw Omaze ads, accessed Omaze's website, and donated to Omaze

3   campaigns while living in San Jose, CA, which is located in the Northern District.  Plaintiffs argue

4   that this lawsuit accordingly arose from events that happened in this district and that Omaze

5   directed its conduct towards this district.  Plaintiffs argue that either of these findings suffices to

6   make venue proper in the Northern District.

7        Omaze argues that the connection between its activities and this district are too tenuous to

8   make venue proper.  Omaze argues that if Knüttel's visit to Omaze's website were enough to

9   establish venue in the Northern District, then Omaze could be sued in any district in which a

10  would-be plaintiff accessed its website – which is to say, potentially every district in the country.

11  Omaze argues that such an outcome would contradict the underlying purpose of the venue statutes,

12  which is to limit lawsuits to those districts where either the defendant resides or the defendant's

13  conduct gave rise to the suit.  In Omaze's view, venue is instead proper in the Central District of

14  California, because that is where Omaze is based and makes all its website and marketing

15  decisions.  Omaze thus moves to dismiss for improper venue under Rule 12(b)(3).

16  **II.      JURISDICTION**

17       This Court has subject-matter jurisdiction over this putative class action under 28 U.S.C. §

18  1332(d)(2): the amount in controversy exceeds $5 million and at least one member in the proposed

19  class of over 100 members is a citizen of a different state from the Defendant.  This Court has

20  supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367.

21  **III.     LEGAL STANDARD**

22       Once a defendant has moved to dismiss for improper venue under Rule 12(b)(3), "the

23  plaintiff bears the burden of showing that venue is proper." *Autodesk, Inc. v. Kobayashi + Zedda*

24  *Architects Ltd.*, 191 F. Supp. 3d 1007, 1020 (N.D. Cal. 2016) (citing *Piedmont Label Co. v. Sun*

25  *Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979)).  At that point, the "pleadings need not be

26  accepted as true, and facts outside the pleadings may be considered."  *Doe 1 v. AOL LLC*, 552

27  F.3d 1077, 1081 (9th Cir. 2009) (per curiam).

28       Under 28 U.S.C. § 1406(a), "if the court determines that venue is improper, the court must

United States District Court
Northern District of California

2

1    either dismiss the action or, if it is in the interests of justice, transfer the case to a district or

2    division in which it could have been brought.  Whether to dismiss for improper venue, or

3    alternatively to transfer venue to a proper court, is a matter within the sound discretion of the

4    district court."  *Autodesk, Inc.*, 191 F. Supp. 3d at 1020-21 (simplified).

5    **IV.    DISCUSSION**

6         **A.    Transactional Venue**

7         Under 28 U.S.C. § 1391(b)(2), venue is proper in the district where "a substantial part of

8    the events or omissions giving rise to the claim occurred."  This substantiality inquiry focuses on

9    the "relevant activities of the defendant, not of the plaintiff."  *Woodke v. Dahm*, 70 F.3d 983, 985

10   (8th Cir. 1995).[2]  And "[o]nly the events that directly give rise to a claim are relevant."  *Lawler v.*

11   *Tarallo*, No. C 13-03284 MEJ, 2013 WL 5755685, at *3 (N.D. Cal. Oct. 23, 2013) (simplified).

12        Plaintiffs contend that "a substantial portion of the events alleged occurred" in the

13   Northern District of California because "Omaze marketed and sold its products and services

14   throughout California, including in this district."  ECF No. 26 at 8.  Supporting that contention are

15   Plaintiffs' allegations that one of the three Plaintiffs – Knüttel – "visited the Omaze website,"

16   "viewed Omaze's marketing," "created an Omaze account, signed up for Omaze's emails, and

17   purchased numerous entries into multiple sweepstakes," all while living in the Northern District.

18   ECF No. 1 ¶ 106; ECF No. 26 at 5.

19        Omaze argues that it "has no particular connection to the Northern District of California

20   other than the mere happenstance that Knüttel resides in this District and entered an Omaze

21   sweepstakes."  ECF No. 14 at 9.  It reasons that these facts cannot be enough to establish venue, or

22   else venue would be proper in any district in the country.  *Id.*

23        The Court agrees that venue does not sweep that broadly.  Venue is "intended to preserve

24   _____

25   [2] Although the Ninth Circuit has held that, in tort actions, the location where a plaintiff feels the
     harm is also "a relevant factor," it is but one factor courts must consider in their substantiality
26   analysis.  *See Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1076 (9th Cir. 2001).  And Plaintiffs here
     allege merely economic harm, which courts generally agree "is not by itself sufficient to warrant
27   transactional venue."  *See* Charles A. Wright & Arthur A. Miller, 14D Fed. Prac. & Proc. Juris. §
     3806, n.22 (4th ed.) (citing cases); *see also Myers*, 238 F.3d at 1076 (recognizing "the locus of the
28   injury" as "a relevant factor" for venue in an invasion-of-privacy tort case).

United States District Court
Northern District of California

3

1    the element of fairness so that a defendant is not haled into a remote district having no real

2    relationship to the dispute." *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d

3    Cir. 1994). As a result, the venue inquiry focuses on the defendant's activities, not the plaintiff's.

4    *Woodke*, 70 F.3d at 985. Furthermore, "[t]here is a tendency to conclude that suffering economic

5    harm within a district is not by itself sufficient to warrant transactional venue there." Wright &

6    Miller, 14D Fed. Prac. & Proc. Juris. § 3806. Otherwise, "venue almost always would be proper

7    at the place of the plaintiff's residence, an option that Congress abolished in the general venue

8    statute."[3] *Id.* Courts thus must look "not to a single triggering event prompting the action, but to

9    the entire sequence of events underlying the claim." *Norsworthy* v. *Diaz*, 20-CV-01859-JST, 2020

10   WL 10965424, at *2 (N.D. Cal. June 10, 2020) (simplified).

11           Applying that sequence-of-events standard, the Court finds that the substantial events

12   underlying Plaintiffs' claims did not occur in the Northern District. Plaintiffs' claims all arise

13   from Omaze's website – the webpages that advertise its "experiences," prompt visitors to donate,

14   and explain (or do not explain) the rules governing its fundraising campaigns. At the heart of

15   those claims are Omaze's decisions about website design and what language to use on its website

16   to market the campaigns. As Omaze acknowledges, however, all "decision-making concerning

17   Omaze's Website and marketing efforts [was] centralized at Omaze's headquarters in Los

18   Angeles, California" during "all times relevant to this case." ECF No. 17 at 2. Similarly,

19   Plaintiffs' complaint alleges that Omaze's "wrongful acts and omissions . . . were carried out

20   and/or directed from Defendant's California headquarters" in Los Angeles. ECF No. 1 at 22.

21   Thus, while Knüttel's visit to the Omaze website may have been the "single triggering event" that

22   ultimately ripened his claims, the "sequence of events underlying [his and the other Plaintiffs']

23   claims" all took place in the Central District. *See Norsworthy*, 2020 WL 10965424, at *2

24   (simplified).

25           Plaintiffs have thus failed to show that the Northern District "host[ed] a 'substantial part'

26   of the events" which gave rise to their claims. *Id.* (simplified). That failure defeats their claim

27

28   [3] The Court recognizes that this option was only ever available in diversity cases. But the
     fundamental point regarding Congress's intent remains.

United States District Court
Northern District of California

4

1    that venue is proper here under 28 U.S.C. 1391(b)(2).

2        **B.      Residence Venue**

3        Under 28 U.S.C. § 1391(b)(1), venue is proper in any district where a defendant "resides."

4    A corporate defendant resides in a district if they have engaged in intentional conduct "expressly

5    aimed" towards a district that caused "harm that the defendant [knew was] likely to be suffered"

6    there. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020) (simplified); *see*

7    28 U.S.C. § 1391(d) (explaining that a defendant resides in a district if their contacts would be

8    "sufficient to subject it to personal jurisdiction if that district were a separate State").

9        For the first time,[4] Plaintiffs argue that venue in the Northern District of California is

10   proper because Omaze "resides" here.  ECF No. 26 at 8.  Plaintiffs contend that Omaze resides in

11   the Northern District because Omaze expressly aimed its tortious conduct towards this district

12   through its website.  ECF No. 26 at 8.  But the lone fact underpinning Plaintiffs' express-aiming

13   argument is that Knüttel saw Omaze's online ads while living in the Northern District.  That

14   circumstance, standing alone, is not enough to meet Plaintiffs' burden.

15       As the Ninth Circuit has explained, for a defendant's website to show express aiming, the

16   website must "directly target[]" the forum.  *AMA Multimedia*, 970 F.3d at 1210.  But there is a

17   difference between conduct that *happens* to reach a forum and conduct that is *aimed* towards a

18   forum.  As the *AMA* court emphasized, "[n]ot all material placed on the Internet is, solely by virtue

19   of its universal accessibility, expressly aimed at every [forum] in which it is accessed."  *AMA*

20   *Multimedia, LLC v. Wanat*, 970 F.3d at 1211 (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

21   647 F.3d 1218, 1231 (9th Cir. 2011)).  None of Plaintiffs' factual allegations suggest that Omaze

22   was specifically targeting either Knüttel or the Northern District.  None of Plaintiffs' allegations,

23   for instance, suggest that Omaze's website has a Northern District-specific focus, or even that

24   Omaze markets its website in a way intended to appeal to those who live in the Northern District.

25   *Cf. Mavrix*, 647 F.3d at 1229 (9th Cir. 2011) (finding that a website purposely availed itself of the

26   California market by exploiting its celebrity and entertainment industries).  If anything, Plaintiffs'

27   _____

28   [4] Although Plaintiffs' complaint did not plead § 1391(b)(1) as a basis for venue, the Court
     considers their argument in the interest of judicial efficiency.

United States District Court
Northern District of California

1    complaint suggests that Omaze's fundraising campaigns are intended to reach a global audience,

2    given that residents of nearly every country in North America, South America, Europe, and

3    Australia may participate.  *See* ECF No. 1, Ex. A at 49; *id.*, Ex. B at 53 (identifying eligibility

4    requirements).  Thus, "[a]lthough [Omaze] may have foreseen that [its website] would attract a

5    substantial number of viewers in the [Northern District], this alone does not support a finding of

6    express aiming."  *AMA Multimedia,* 970 F.3d at 1210.

7           Because Plaintiffs do not allege facts that show Omaze expressly aimed its conduct

8    towards the Northern District, Omaze does not reside here.  That is fatal to Plaintiffs' venue

9    argument under 28 U.S.C. § 1391(b)(1).

10          **C.      Transferring Venue**

11          Now that the Court has concluded Plaintiffs filed their case in the wrong district, the Court

12   must either "dismiss for improper venue" or "transfer [the] case" to the proper district if it would

13   "be in the interest of justice" to do so.  *See* 28 U.S.C. § 1406(a).  But because "dismissal of an

14   action that could have been brought elsewhere is time-consuming and justice-defeating," courts

15   usually find that transfer is in the interest of justice.  *Miller v. Hambrick*, 905 F.2d 259, 262 (9th

16   Cir. 1990) (simplified).  The Court so finds, and will thus transfer this case to the Central District

17   of California.

18                                   **CONCLUSION**

19          For the reasons explained, the Court finds that venue in the Northern District of California

20   is improper and that transfer under 28 U.S.C. § 1406(a) is appropriate.  The Court thus grants

21   Omaze's motion to dismiss for improper venue.  The clerk is directed to transfer this case to the

22   United States District Court for the Central District of California.

23          **IT IS SO ORDERED.**

24   Dated:  November 16, 2021



25   _____

26                                   JON S. TIGAR
                                     United States District Judge

27

28

United States District Court
Northern District of California