JEFFREY N. WILLIAMS (SBN 274008)
jwilliams@wargofrench.com
NICOLA A. GELORMINO (*pro hac vice* pending)
ngelormino@wargofrench.com
WARGO & FRENCH LLP
601 S. Figueroa St., Suite 4625
Los Angeles, CA 90017
Tel: (310) 853-6300
Fax: (310) 853-6333

Attorneys for Defendant
OMAZE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS KNÜTTEL, MATTHEW JURANEK, AND ADRIANA CARLIN as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>OMAZE, INC., a Delaware Corporation,<br><br>    Defendant. | Case No. 2:21-cv-09034-SB-PVC<br><br>**NOTICE OF MOTION AND MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: February 11, 2022<br>Time: 8:30am<br>Courtroom: 6C<br><br>Complaint Filed: April 15, 2021<br>FAC Filed: December 15, 2021<br><br>Hon. Stanley Blumenfeld Jr. |

TO ALL PARTIES HEREIN AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on February 11, 2022, at 8:30am in Courtroom 6C of the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, Defendant Omaze, Inc. ("Omaze") shall move and hereby moves the Court for an order striking the nationwide class allegations within the First Amended Complaint ("FAC") filed by Plaintiffs Andreas Knüttel, Matthew Juranek, and Adriana Carlin ("Plaintiffs") pursuant to Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) of the Federal Rules of Civil Procedure.

This Motion is made on the ground that Plaintiffs, California citizens, "do not have standing to assert claims from states in which they do not reside" and it is "appropriate . . . to address [such] standing in advance of class certification." *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (Blumenfeld, J.). Additionally, California's applicable choice-of-law analysis requires that each foreign citizen's consumer-protection claims shall be governed by the laws of their own state, presenting predominance and manageability hurdles that—even at the pleadings stage—clearly cannot be surmounted in a nationwide putative class involving citizens of all fifty states. *Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115, 1124-26 (C.D. Cal. 2020), citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012).

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 20, 2021, in which the parties thoroughly discussed the substance and potential resolution of the filed motion by telephone.

//

//

//

//

//

1    This Motion is based upon this Notice of Motion and attached Memorandum of

2   Points and Authorities, the Declaration of Jessica Segal ("Segal Decl.") [ECF No. 17]

3   and Request for Judicial Notice ("RJN") [ECF No. 18] previously filed, the complete

4   files and records in this action, and other matters as the Court may allow.

5   Dated:  January 12, 2022            WARGO & FRENCH LLP

6
                                        By:   /s Jeff Williams
7                                             JEFFREY N. WILLIAMS

8                                       Attorneys for Defendant Omaze, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## __TABLE OF CONTENTS__

2

__Page No.__

3

TABLE OF CONTENTS .................................................................................. i

4

TABLE OF AUTHORITIES ............................................................................ ii

5

MEMORANDUM OF POINTS AND AUTHORITIES ...................................... 1

6

I.     INTRODUCTION ................................................................................... 1

7

II.    STATEMENT OF FACTS ....................................................................... 2

8

III.   LEGAL STANDARD .............................................................................. 5

9

IV.    ARGUMENT .......................................................................................... 7

10

    A.     Plaintiffs Lack Standing to Represent the Interests of Putative Class
    Members Residing in Other States .......................................................... 7

11

    B.     *Mazza*'s Governmental Interest Analysis Mandates that Plaintiffs'
    Nationwide Class Allegations be Stricken............................................... 8

12

13

        1.    Conflicts in consumer protection statutes.................................. 11

        2.    Conflicts in unjust enrichment claims. ...................................... 13

14

        3.    Conflicts in fraud claims............................................................ 14

15

        4.    Conflicts on how to enforce class waivers. ................................ 15

16

            i.     Different states enforce class waivers differently. ............. 15

17

            ii.    The choice-of-law provision has no ultimate impact......... 19

18

    C.     The Court Should Not Wait Until Class Certification to Strike
    Plaintiffs' Nationwide Class Allegations................................................. 22

19

V.     CONCLUSION ..................................................................................... 22

20

21

22

23

24

25

26

27

28

__MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC__

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page No.**

3

**Cases**

4

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D. N.J. 2011) ........................................................ 14

*Arnold v. Microsoft Corp.*,
   No. 00-CI-00123, 2000 WL 36114007 (Ky. Cir. Ct. July 21, 2000)...................... 11

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333, 131 S. Ct. 1740 (2011) .................................................... 18

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) .......................................................... 13

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) .................................................. 2, 6

*Cadena v. Am. Honda Motor Co.*,
   No. CV184007MWFPJWX, 2019 WL 3059931 (C.D. Cal. May 29, 2019)....... 8, 10

*Davison v. Kia Motors Am., Inc.*,
   No. 15-00239, 2015 WL 3970502 (C.D. Cal. June 29, 2015) .......................... 13, 14

*Derbaremdiker v. Applebee's Int'l, Inc.*,
   No. 12-CV-01058 KAM, 2012 WL 4482057 (E.D.N.Y. Sept. 26, 2012)......... 17, 18

*DIRECTV, Inc. v. Imburgia*,
   577 U.S. 47, 136 S. Ct. 463 (2015) ....................................................... 18

*Discover Bank v. Superior Ct.*,
   36 Cal. 4th 148 (2005)........................................................................ 18

*Dohrmann v. Intuit, Inc.*,
   823 F. App'x 482 (9th Cir. 2020) ......................................................... 16

*Drake v. Toyota Motor Corp.*,
   No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ..... 1, 8

*Estrella v. Freedom Fin. Network, LLC*,
   No. C 09-03156 SI, 2010 WL 2231790 (N.D. Cal. June 2, 2010) ................... 19, 20

*Feld v. Postmates, Inc.*,
   442 F. Supp. 3d 825 (S.D.N.Y. 2020)..................................................... 17

*Fonte v. AT&T Wireless Servs., Inc.*,
   903 So. 2d 1019 (Fla. 4th DCA 2005) ................................................... 18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Frenzel v. AliphCom*,
  76 F. Supp. 3d 999 (N.D. Cal. 2014) .............................................................. 10, 22

*Frezza v. Google*,
  No. 12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ............... 10

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147, 102 S.Ct. 2364 (1982) ........................................................ 6

*Gianino v. Alacer Corp.*,
  846 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................... 14, 15

*Granfield v. NVIDIA*,
  No. 11-cv-05403-JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) .................... 10

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
  379 F.3d 159 (5th Cir. 2004) .................................................................... 12

*In re Actiq Sales & Mktg. Pracs. Litig.*,
  307 F.R.D. 150 (E.D. Pa. 2015) ............................................................... 14

*In re Toyota Motor Corp.*,
  790 F. Supp. 2d 1152 (C.D. Cal. 2011) ..................................................... 6

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ...................................................... 8

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ................................................................... 6

*Lane v. Wells Fargo Bank N.A.*,
  No. C 12-04026 WHA, 2013 WL 269133 (N.D. Cal. Jan. 24, 2013) ................... 21

*Larsen v. Vizio, Inc.*,
  No. SACV1401865CJCJCGX, 2015 WL 13655757 (C.D. Cal. Apr. 21, 2015) ..... 15

*Leviton Mfg. Co. v. Pass & Seymour, Inc.*,
  264 F. Supp. 3d 421 (E.D.N.Y. 2017) ...................................................... 6

*Littlehale v. Hain Celestial Grp.*,
  No. 11-cv-06342-PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012) ................... 10

*Mantolete v. Bolger*,
  161 F.2d 1416 (9th Cir. 1985) ................................................................... 6

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ........................................................... passim

*McCann v. Foster Wheeler LLC*,
  48 Cal. 4th 68 (2010) .............................................................................. 8

**MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC**

*McFall v. Perrigo*,
   Case No. 2:20-cv-07752-FLA (C.D. Cal. Apr. 15, 2021) ................................... 8, 10

*Mosqueda v. Am. Honda Motor Co., Inc.*,
   443 F. Supp. 3d 1115 (C.D. Cal. 2020)................................................................. 8, 10

*Nedlloyd Lines v. Superior Ct.*,
   3 Cal. 4th 459 (1992)............................................................................................. 21

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014)................................................................................ 16

*Palmer v. Convergys Corp.*,
   No. 7:10-CV-145 HL, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) ........................ 18

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................................... 16

*Reiners v. Chou Team Realty, LLC*,
   No. 2:20-CV-06587-SB-ADS, 2021 WL 4894277 (C.D. Cal. Apr. 9, 2021) ....... 5, 7

*Schepler v. Am. Honda Motor Co.*,
   No. CV 18-6043-GW, 2019 WL 398000 (C.D. Cal. Jan. 29, 2019) ...................... 10

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020)................................................................................. 14

*Stitt v. Citibank*, No. 12-CV-03892-YGR,
   2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ...................................................... 13

*Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*,
   No. 5:05CV260 OCGRJ, 2007 WL 1114045 (M.D. Fla. Apr. 12, 2007)............... 21

*Thompson v. Am. Tobacco Co.*,
   189 F.R.D. 544 (D. Minn. 1999).......................................................................... 12

*Thompson v. Bayer Corp.*,
   No. 4:07CV00017, 2009 WL 362982 (E.D. Ark. Feb. 12, 2009)........................... 14

*Tietsworth v. Sears*,
   720 F. Supp. 2d 1123 (N.D. Cal. 2010) .................................................................. 6

*U1it4Less, Inc. v. FedEx Corp.*,
   No. 11-CV-1713 KBF, 2015 WL 3916247 (S.D.N.Y. June 25, 2015) .................. 18

*Waller v. Hewlett–Packard*,
   2012 WL 1987397 (S.D. Cal. June 4, 2012)........................................................... 10

*Whittlestone, Inc. v. Handi-Craft Co.*,
   618 F.3d 970 (9th Cir. 2010).................................................................................. 5

**MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC**

*Williams v. Bear Stearns & Co.*,
    725 So.2d 397 (Fla. 5th DCA 1998) ........................................................ 14

*Wright v. Publishers Clearing House, Inc.*,
    439 F. Supp. 3d 102 (E.D.N.Y. 2020) ..................................................... 17

*Zakikhan v. Hyundai Motor Co.*,
    No. 820CV01584SBJDEX, 2021 WL 4805454 (C.D. Cal. June 28, 2021) .............. 8

**Statutes**

Cal. Civ. Code § 1751 ................................................................................. 18

Cal. Civ. Code § 1780 ................................................................................. 12

Cal. Civ. Code § 1784 ................................................................................. 12

Colo. Rev. Stat. § 6-1-113(2)(a) ................................................................ 12

Conn. Gen. Stat. § 42-110g(b) .................................................................. 12

La. Stat. Ann. § 51:1409(A) ....................................................................... 12

Tex. Bus. & Com. Code § 17.50(b) ........................................................... 12

**Other Authorities**

Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation*,
    35 Am. U. L. Rev. 547, 558–60 (1986) .................................................. 13

Restatement (Second) of Conflicts of Laws § 188 ................................. 20

Restatement (Second) of Conflicts of Laws § 187(2)(b) ....................... 20

**Rules**

Fed. R. Civ. P. 10(c) ..................................................................................... 6

Fed. R. Civ. P. 12(f) ..................................................................................... 5

Fed. R. Civ. P. 23(c)(1)(A) .......................................................................... 6

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................... 6

Fed. R. Evid. 201 .......................................................................................... 6

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs and their counsel seek in this litigation to represent massive California and nationwide classes composed of essentially every user that has ever entered an Omaze sweepstakes.  Plaintiffs claim that Omaze's allegedly misleading sweepstakes disclosures violated state consumer-protection statutes and common-law doctrines of fraud and unjust enrichment.

As California citizens, however, Plaintiffs, may not represent a nationwide putative class asserting such claims and their nationwide class allegations should be stricken.  It is well-established that plaintiffs may not represent the interests of putative class members asserting claims under the laws of other states.  *Drake v. Toyota Motor Corp.*, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (Blumenfeld, J.).  And the Ninth Circuit conclusively ruled in *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012) ("*Mazza*") that foreign citizens and putative class members cannot bring claims under California's consumer protection statutes and doctrines of unjust enrichment and fraud/deceit.  Rather, California's choice-of-law analysis mandates that individuals allegedly harmed in other states are governed by the relevant laws of those states.  As the Ninth Circuit noted, "foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state," *id.* at 594, and each state's respective interests would be impaired if its policies in the enforcement of those laws were subordinated to the policies of another.

The accompanying appendices (ECF Nos. 18-2, 18-3) demonstrate how the claims made in this case would be materially different depending on the state in which they were brought.  Not only does this require that the Court apply those foreign states' laws and find that Plaintiffs lack standing to enforce them, the application of fifty different states' laws presents predominance and manageability hurdles that clearly prevent a nationwide class from proceeding in this case.

1     Furthermore, the conflict is not simply limited to the elements of the putative

2     class members' claims.  As but one example, the Official Rules governing every

3     Omaze sweepstakes contained an unambiguous contractual waiver of the right to sue

4     Omaze in a class action.  Plaintiffs admit "relying on" the pages of Omaze's website

5     that contained well-labeled recitations of the rules and prominent hyperlinks to view

6     the class waiver language at issue, and they are therefore bound by those rules.  Most

7     states enforce such class action waivers, grounded in fundamental policies favoring

8     the right to contract.  California, however, is in the minority of states that may in

9     some circumstances refuse to enforce a valid class waiver.  In this and other ways, the

10    application of California law to a nationwide class would engender conflict and

11    impair other states' interests, which the Ninth Circuit has held is impermissible.

12    Numerous district courts have applied this reasoning at the pleadings stage, as

13    the conflict of laws is a legal question—not a factual question—and no part of the

14    analysis would change on a motion for class certification.  The Court should follow

15    suit here and strike the clearly-implausible nationwide class allegations from the FAC

16    to "streamline the ultimate resolution of the action." *Brown v. Hain Celestial Grp.,*

17    *Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012).

18  **II.   STATEMENT OF FACTS**

19    Plaintiffs purport to assert five claims for relief in this case: (i) violation of the

20    California Consumers Legal Remedies Act ("CLRA"); (ii) violation of the California

21    Unfair Competition Law ("UCL"); (iii) fraud, deceit, and/or misrepresentation; (iv)

22    violation of the California False Advertising Law ("FAL"); and (v) unjust enrichment.

23    FAC (ECF No. 70) at pp. 50-61.  Plaintiffs are each California citizens and make no

24    allegation that they reside or entered sweepstakes in any other states, such as to confer

25    standing to assert claims under the laws of those states.  *Id.* at ¶¶ 17-19; *see also id.*,

26    Exs. A-C.  Plaintiffs also do not allege any particular reason to believe that putative

27    class members residing in other states may assert claims under California law.  *See*

28    *generally id.*

Nevertheless, each of Plaintiffs' claims are asserted on behalf of themselves as well as a nationwide and California "Class and [] Subclasses." *Id.* The putative "Class and [] Subclasses" are defined in the FAC as follows:

> The Class: All natural persons within the United States who between April 13, 2017, or earlier date within the applicable statute of limitations, and the date of preliminary approval donated money to charity via Omaze.
>
> The Omaze-Owned Campaign Subclass: All Class Members who donated money to charity through an Omaze-owned campaign on the Omaze platform.
>
> The California Subclass: All Class Members who reside in the State of California.
>
> The California Omaze-Owned Campaign Subclass: All California Subclass Members who donated money to charity through an Omaze-owned campaign on the Omaze platform.

*Id.* at ¶ 223.[1]

In support of their various claims, Plaintiffs generally assert that they each entered sweepstakes through the Omaze website, "[r]elying on Omaze's experience pages for the [relevant] campaigns" as well as Omaze's "ads, e-mails, experience pages and payment page." *Id.* at ¶¶ 178-81, 198-201, 209, 212-13.  Mr. Knüttel alleges that he entered sweepstakes through the Omaze website both "[d]uring the period from 2018 to 2020" as well as from "roughly 2017 until October 2020" (it is unclear, from the face of the FAC, what accounts for this discrepancy).  *Id.* at ¶ 177, 183.  Mr. Juranek alleges that he entered sweepstakes through the Omaze website "during the period from 2015 until October 2020."  *Id.* at ¶ 203.  Ms. Carlin alleges that she entered sweepstakes through the Omaze website "during the period from March 2016 until October 2020."  *Id.* at ¶ 216.

---

[1] The FAC therefore defines the 'class period' as the timeframe between the outside date on the statute of limitations (four years at most) and a hypothetical future class certification date.  However, as explained below, the putative class cannot include any individuals who entered sweepstakes after ***January 5, 2021***, as that is the date Omaze implemented a mandatory arbitration clause in the Official Rules, accompanied by a class waiver.  Segal Decl. (ECF No. 17), Ex. 2.

**MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC**

At all such times, entry into Omaze's sweepstakes was governed by Omaze's Official Rules. *See* Segal Decl. (ECF No. 17), Exs. 2-9. No matter where a user is or was on the Omaze website, the Official Rules could always be found, at minimum, by clicking a prominent link at the bottom of the page. *Id.* And at all such times, the Official Rules carried explicit waivers of the right to resolve disputes on a classwide basis (the "Class Waiver"), such as the following:

> [A]ny and all disputes, claims and causes of action arising out of or connected with this Promotion, the prize awarded or the determination of the official winner shall be resolved individually, without resort to any form of class action.

*Id.*, Exs. 8-9 at ¶ 8, Ex. 7 at ¶ 10; *see also id.,* Exs. 3-6 at p. 4.

> PARTICIPANT AND SPONSOR ALSO AGREE THAT (A) ANY CLAIMS WILL BE RESOLVED INDIVIDUALLY, NOT AS A PLAINTIFF OR CLASS REPRESENTATIVE, MEMBER OF, OR OTHERWISE ON BEHALF OF OTHERS IN ANY PURPOSED CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING, AND NOT THROUGH ANY CLASS ACTION.

*Id.,* Ex. 2 at ¶ 13 (caps in original).

Each individual sweepstakes that Plaintiffs entered was also governed by a set of rules particular to that sweepstakes or experience (the "Experience Rules"), which were presented on the same page as the information about the experience (the "Experience Page"). *See, e.g.*, FAC, Ex. D (ECF No. 70-4); Segal Decl. (ECF No. 17), Ex. 1. A user of the Omaze website must navigate the Experience Page to enter a sweepstakes, and Plaintiffs admit not only doing so when they entered the sweepstakes at issue in this case but indeed that they were "relying on" those Experience Pages. *Id.*; *see also* FAC (ECF No. 70) at ¶¶ 178-81, 198-201, 209, 212-13. Within each Experience Page, the Experience Rules were prominently demarcated by a large-font, bolded banner stating: "**stuff our lawyers want you to read**." *See, e.g.*, FAC, Ex. D (ECF No. 70-4); Segal Decl. (ECF No. 17), Ex. 1. In addition to the links at the bottom of each webpage, the Experience Rules also contained prominent and well-marked references to the Official Rules—stating, for

1  example, "See our Sweepstakes Official Rules for more details"—which references

2  were then hyperlinked to the Official Rules.  *Id.*

3       Plaintiffs have explicitly refused to allege or admit whether they saw the

4  Official Rules when entering, despite that this information is clearly in their sole

5  possession.  *See, e.g.*, Opp. to Mtn. to Strike (ECF No. 27) at p. 1.  Plaintiffs'

6  equivocal position apparently derives from the fact that most versions of the Official

7  Rules applicable to their experiences contained not only a Class Waiver but a

8  California choice-of-law provision.  *E.g.*, Segal Decl. (ECF No. 17), Ex. 3 at p. 4.[2]

9  Plaintiffs thus seek to invoke the choice-of-law provision in the Official Rules to

10  argue that the nationwide class may proceed, but recognize if they concede the

11  applicability of the Official Rules, they must also admit they were aware of the

12  disclosures and other sweepstakes terms reflected therein—including the Class

13  Waiver.  For reasons set forth below, the nationwide class allegations must be

14  stricken whether or not the Official Rules apply—but Plaintiffs' position appears to

15  be deliberately designed to unnecessarily multiply these proceedings and prolong a

16  decision on class treatment that can clearly be adjudicated now.

17  **III.   LEGAL STANDARD**

18       Rule 12(f) permits the Court to strike "redundant, immaterial, impertinent, or

19  scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike

20  is to avoid the expenditure of time and money that must arise from litigating spurious

21  issues by dispensing with those issues prior to trial."  *Reiners v. Chou Team Realty,*

22  *LLC*, No. 2:20-CV-06587-SB-ADS, 2021 WL 4894277, at *1 (C.D. Cal. Apr. 9,

23  2021) (Blumenfeld, J.), citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970,

24  973 (9th Cir. 2010).  "In the Ninth Circuit, motions to strike are proper, even if the

25  material is not prejudicial to the moving party, if granting the motion would make

26  trial less complicated or otherwise streamline the ultimate resolution of the action."

27  _____

28  [2] As of January 5, 2021, the choice-of-law provision in the Official Rules was
amended to reflect Delaware law.  Segal Decl. (ECF No. 17), Ex. 2 at ¶ 14.

1  *Brown*, 913 F. Supp. 2d at 888.  Thus, while "class allegations generally are not tested

2  at the pleadings stage . . . as the Supreme Court has explained, sometimes the issues

3  are plain enough from the pleadings to determine whether the interests of the absent

4  parties are fairly encompassed within the named plaintiff's claim." *Id.*, citing *Gen.*

5  *Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364 (1982) (cleaned up).

6  "Thus, a court may grant a motion to strike class allegations if it is clear from the

7  complaint that the class claims cannot be maintained." *Id.*

8       Rule 23 also permits the Court to settle class issues at an "early practicable

9  time" and to "require that the pleadings be amended to eliminate allegations about

10  representation of absent persons and that the action proceed accordingly." Fed. R.

11  Civ. P. 23(c)(1)(A), (d)(1)(D).  Thus, "[u]nder Rules 23(c)(1)(A) and 23(d)(1)(D), as

12  well as pursuant to Rule 12(f), th[e] Court has authority to strike class allegations

13  prior to discovery if the complaint demonstrates that a class action cannot be

14  maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010); *see*

15  *also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some

16  cases a district court should allow discovery to aid the determination of whether a

17  class action is maintainable, the plaintiff bears the burden of advancing a prima facie

18  showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that

19  discovery is likely to produce substantiation of the class allegations.").

20       In addition to the four corners of the complaint, a court may also consider at the

21  pleadings stage two alternative sources of information: that which is subject to

22  judicial notice under Fed. R. Evid. 201, and that which is appropriately incorporated

23  by reference under Fed. R. Civ. P. 10(c).  *In re Toyota Motor Corp.*, 790 F. Supp. 2d

24  1152, 1170 (C.D. Cal. 2011); *Leviton Mfg. Co. v. Pass & Seymour, Inc.*, 264 F. Supp.

25  3d 421, 428 (E.D.N.Y. 2017); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th

26  Cir. 2005) (court may consider "documents whose contents are alleged in a complaint

27  and whose authenticity no party questions, but which are not physically attached to

28  the plaintiff's pleading.  We have extended the incorporation by reference doctrine to

1  situations in which the plaintiff's claim depends on the contents of a document, the

2  defendant attaches the document to its motion to dismiss, and the parties do not

3  dispute the authenticity of the document, even though the plaintiff does not explicitly

4  allege the contents of that document in the complaint") (cleaned up).

5  **IV.   <u>ARGUMENT</u>**

6        Plaintiffs purport to represent both California and nationwide putative classes

7  in their claims against Omaze, casting as wide a net as possible to maximize their

8  alleged damages—which they essentially calculate as every dollar ever donated to

9  charity by any Omaze user.  *E.g.*, FAC (ECF No. 17) at ¶ 262.  In so doing, Plaintiffs

10 therefore propose to implicate every user's donation or interaction occurring online

11 across fifty different states.  Each state, of course, has its own laws and its own vested

12 interests in how to protect its residents from the alleged harms described in the

13 Complaint.  Untangling how each transaction occurred as a factual matter, and how it

14 should be viewed as a legal matter, will be an unmanageable task.  The scope of this

15 action clearly threatens to be overwhelming for all involved.

16       The twin interests of justice and judicial economy therefore suggest that this is

17 a case in which the Court may appropriately exercise its role in assessing Plaintiffs'

18 class allegations at the pleadings stage.  *See <u>Reiners</u>, 2021 WL 4894277, at *1*

19 (motion to strike class allegations appropriate "to avoid the expenditure of time and

20 money that must arise from litigating spurious issues by dispensing with those issues

21 prior to trial").  The Court should strike Plaintiffs' nationwide class allegations and

22 require Plaintiffs to re-plead their claims only on behalf of California residents.

23       **A.   Plaintiffs Lack Standing to Represent the Interests of Putative Class**

24             **Members Residing in Other States**

25       At the outset, it is well-established that if a named plaintiff or class

26 representative lacks standing to assert a claim in his or her own capacity, that named

27 plaintiff or class representative may not represent the interests of any putative class

28 members asserting such claims.  Here, Plaintiffs are all California citizens, yet they

seek to represent a nationwide putative class asserting claims under state consumer-protection statutes and common-law doctrines of fraud, misrepresentation and unjust enrichment.  This Court has ruled on multiple occasions that such a strategy is clearly impermissible.  *Drake*, 2020 WL 7040125, at *3; *Zakikhan v. Hyundai Motor Co.*, No. 820CV01584SBJDEX, 2021 WL 4805454, at *6 (C.D. Cal. June 28, 2021) (Blumenfeld, J.); *see also Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured.").

## B.    *Mazza*'s Governmental Interest Analysis Mandates that Plaintiffs' Nationwide Class Allegations be Stricken

Nor can Plaintiffs represent a nationwide putative class asserting claims under California law, given that the claims of putative class members residing in other states must be governed by the laws of those states—not by California law.  *Mazza*, 666 F.3d at 589-94; *see also Mosqueda v. Am. Honda Motor Co., Inc.*, 443 F. Supp. 3d 1115 (C.D. Cal. 2020) (applying *Mazza* at pleadings stage and dismissing nationwide class allegations); *Cadena v. Am. Honda Motor Co.*, No. CV184007MWFPJWX, 2019 WL 3059931 (C.D. Cal. May 29, 2019) (same); *McFall v. Perrigo Co.*, No. 220CV07752FLAMRWX, 2021 WL 2327936 (C.D. Cal. Apr. 15, 2021) (same).

In *Mazza*, the Ninth Circuit considered whether a putative nationwide class of car purchasers could sue seller in California, alleging California state-law claims for under the CLRA, UCL and FAL, and for unjust enrichment, based on the seller's alleged misrepresentations.  666 F.3d at 587, 590.  Because the plaintiffs resided in 44 different states, however, the Ninth Circuit correctly observed that "California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied," and applied the three-step governmental interest test stated in *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81–82 (2010).  *Id.* at 590.  That test asks: (i) whether the relevant law of each of the

potentially affected states with regard to the particular issue in question is the same or different; (ii) if there is a difference, whether any state has a conflicting interest in the application of its own law under the circumstances of the particular case; and (iii) if there is a true conflict, whether any state's interest would be more impaired if its policy were subordinated to the policy of the other state.  *Id.*  In the event of impairment, the law of the impaired state governs.  *Id.*

The Ninth Circuit then undertook an exhaustive analysis comparing California's consumer protection statutes (the CLRA, UCL and FAL) and its application of unjust enrichment principles to those of other states.  *Id.* at 589-93.  It concluded that applying California law to the claims at issue may result in a materially different outcome than applying the law of the state where the transaction occurred, and "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce."  *Id.*  Thus, it held that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place" and that a nationwide class was not capable of being certified.  *Id.* at 594.

Here, as in *Mazza*, numerous foreign states have an interest in the resolution of the claims of the putative class (at least, as currently pled).  The *Mazza* court observed that "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest' … [and] California considers the 'place of the wrong' to be the state where the last event necessary to make the actor liable occurred."  *Id.* at 593.  Thus, in that case the Court had to apply the law of the state where the putative class member made his or her automobile purchase.  In this case, and for purposes of this governmental interest test, the Court will have to apply the law of every single state where every putative class member was physically located when he or she clicked a button to send an online donation to Omaze.  In both instances, the applicable law was and is unlikely to be California law, necessitating the governmental interest analysis.

**MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC**

1    Given this factual analogy—which can be easily drawn in this case from the

2  face of the FAC—numerous courts have found that the core of *Mazza*'s holding is a

3  **legal** comparison, and as a result "the principle articulated in *Mazza* applies generally

4  and is instructive even when addressing a motion to dismiss." *Schepler v. Am. Honda*

5  *Motor Co.*, No. CV 18-6043-GW, 2019 WL 398000, at *6 (C.D. Cal. Jan. 29, 2019);

6  *see also, e.g., Frezza v. Google,* No. 12-cv-00237-RMW, 2013 WL 1736788, at *5-6

7  (N.D. Cal. Apr. 22, 2013); *Granfield v. NVIDIA*, No. 11-cv-05403-JW, 2012 WL

8  2847575, at *3 (N.D. Cal. July 11, 2012); *Littlehale v. Hain Celestial Grp.*, No. 11-

9  cv-06342-PJH, 2012 WL 5458400, at *1-2 (N.D. Cal. July 2, 2012); *Waller v.*

10  *Hewlett–Packard*, 2012 WL 1987397, *1 (S.D. Cal. June 4, 2012).

11    That is, "[i]n factually analogous cases, *Mazza* is **not only relevant but**

12  **controlling, even at the pleading phase**." *Frenzel v. AliphCom*, 76 F. Supp. 3d 999,

13  1007 (N.D. Cal. 2014) (emphasis added).

14    Indeed, in *Mosqueda*, the court applied *Mazza* at the pleadings stage to dismiss

15  CLRA and UCL claims brought on behalf of a nationwide class where the claims of

16  the named plaintiffs had arisen in California. 443 F. Supp. 3d at 1121-22, 1124-26.

17  Similarly, in *Cadena*, one of the four named plaintiffs made his purchase in

18  California, yet the court likewise dismissed all nationwide classes at the pleadings

19  stage on the familiar ground that "each class member's claims must be governed by

20  the law of the state in which he or she bought his or her Class Vehicle." 2019 WL

21  3059931 at *3-5, 7-8.  And in *McFall*, the court similarly dismissed nationwide class

22  claims at the pleadings stage, reasoning as follows:

23    The court agrees with *Mosqueda* that the Ninth Circuit's analysis of the
     government interest test in *Mazza* can be applied in connection with a
24    motion to dismiss the sufficiency of nationwide class allegations.  The
     *Mazza* court's review and comparison of the different states' consumer
25    protection laws was an act of pure statutory interpretation and the Ninth
     Circuit's conclusion that there were material differences between
26    California consumer protection law and the laws of 43 other
     jurisdictions was a determination of law that now binds this court.
27

28  2021 WL 2327936 at *17.

1    In short, *Mazza* not only requires that the Court reject a nationwide class of

2  plaintiffs asserting violations of California law **where** the "interests of other states are

3  [] found to outweigh California's interest in having its law applied," 666 F.3d at 590,

4  *Mazza* binds district courts to the ruling that that the foreign state interests **do**

5  outweigh California's interest in having its law applied, in the context of the same

6  sorts of consumer protection claims asserted by Plaintiffs here.  Nevertheless, the

7  subsections that follow shall describe how the interests of foreign states would be

8  impaired by allowing Plaintiffs to proceed on a nationwide basis given the specific

9  facts and allegations in this case.

10   Should the Court care to review a detailed comparison between the various

11  statutes and claims at issue—though it need not do so given the binding nature of the

12  ruling in *Mazza*—the Court may refer to the Appendices prepared by the defendants

13  in *Mazza* and *Mosqueda*.  *See* RJN (ECF No. 18), Exs. B-C.

14    1.    *Conflicts in consumer protection statutes.*

15   Plaintiffs do not plead **any** facts in this case to suggest that California has an

16  overarching interest in applying its consumer protection statutes (the CLRA, UCL,

17  and FAL) to govern disclosures that may allegedly mislead citizens of other states,

18  much less one that should overpower those states' competing interests.  As the Ninth

19  Circuit said in *Mazza*, foreign states have a strong interest in "calibrat[ing] liability to

20  foster commerce" within their own borders.  *Mazza*, 666 F.3d at 593.  Declining to

21  strike Plaintiffs' nationwide class allegations in this case would impermissibly

22  infringe upon the policies enacted by those foreign states.

23   For example, Kentucky, Louisiana and other states have determined as a matter

24  of state law that defendants sued under their respective unfair trade practices statutes

25  shall not be required to submit to class-action litigation, while Connecticut and others

26  have limited class actions under those statutes to only in-state plaintiffs.  *E.g.*, *Arnold*

27  *v. Microsoft Corp.*, No. 00-CI-00123, 2000 WL 36114007, at *6 (Ky. Cir. Ct. July 21,

28  2000)*; Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 175 (5th

1   Cir. 2004), citing La. Stat. Ann. § 51:1409(A); Conn. Gen. Stat. § 42-110g(b).

2   Exposing defendants like Omaze to class-action liability to residents of those states—

3   through a choice-of-law analysis favoring California's relatively minor interest in

4   protecting those out-of-state residents—is not an outcome those states have selected

5   in their exercise of legislative discretion and policy, so the courts should not force

6   such an outcome upon them.  *See Mazza*, 666 F.3d at 593 ("[T]he problem is that

7   many state courts faced with interstate class actions have undertaken to dictate the

8   substantive laws of other states by applying their own laws to other states, resulting in

9   a breach of federalism principles.").

10          Similarly, Minnesota and other states will not impose liability on a defendant

11   under their respective unfair trade practices statutes unless the defendant makes a

12   misrepresentation with the intent to induce reliance, whereas other states are not

13   constrained by any scienter requirement before they impose such liability.  *Thompson*

14   *v. Am. Tobacco Co*., 189 F.R.D. 544, 553 (D. Minn. 1999); *compare, e.g.*, Cal. Civ.

15   Code § 1784.  If Plaintiffs are able to establish they were in fact materially harmed by

16   Omaze's disclosures in this case, but cannot prove that Omaze specifically crafted the

17   disclosures to achieve that effect, they may be entitled to relief in certain states, but

18   not in Minnesota and other states.

19          The remedies for each statutory violation likewise appear to be widely

20   different.  The CLRA provides for actual damages with a minimum of $1,000 per

21   person; injunctive relief; restitution; punitive damages; and "any other relief that the

22   court deems proper," while Texas law permits plaintiffs to recover "economic"

23   damages with no minimum yet trebling for intentional conduct, and Colorado law

24   allows for actual damages only if the action is brought on behalf of a class.  Cal. Civ.

25   Code § 1780; Tex. Bus. & Com. Code § 17.50(b); Colo. Rev. Stat. § 6-1-113(2)(a).

26   This means that an Omaze user who donated $100 to charity based on a purported

27   misrepresentation might seek to recover $1,000 in a California class action, yet only

28   $100 in Texas and Colorado—unless Omaze's conduct was intentional, in which case

1   the user might seek $300 in Texas but be limited to seeking $100 in Colorado, while

2   also being precluded from seeking injunctive relief there.

3          These differences are clearly material in the choice-of-law analysis relevant to

4   the purported nationwide class, and would effectively subordinate other states'

5   interests in protecting their residents to the views of the California legislature, which

6   is impermissible for the reasons already described.  *Mazza*, 666 F.3d at 591; *see also*

7   *Davison v. Kia Motors Am., Inc.*, No. 15-00239, 2015 WL 3970502, at *2 (C.D. Cal.

8   June 29, 2015) (holding that differences in scienter and other "essential requirements

9   to establish a claim" are material).

10         Consequently, there are no circumstances in which Plaintiffs could plausibly

11  represent a nationwide class against Omaze under the CLRA, UCL, or FAL.

12                    2.     *Conflicts in unjust enrichment claims.*

13         The analysis is no different for Plaintiffs' unjust enrichment claim; indeed,

14  *Mazza* itself rejected the idea of a nationwide class of unjust enrichment claimants

15  because "[t]he elements necessary to establish a claim for unjust enrichment also vary

16  materially from state to state." 666 F.3d at 591, citing Candace S. Kovacic, *A*

17  *Proposal to Simplify Quantum Meruit Litigation,* 35 Am. U. L. Rev. 547, 558–60

18  (1986).  Courts in this circuit have agreed.  *See Bias v. Wells Fargo & Co.*, 312

19  F.R.D. 528, 540 (N.D. Cal. 2015) ("[C]ertification of a nationwide unjust enrichment

20  class is improper under Rule 23 because material variations in state law would

21  predominate."); *Stitt v. Citibank*, No. 12-CV-03892-YGR, 2015 WL 9177662, at *4

22  n.4 (N.D. Cal. Dec. 17, 2015) ("***No court in this Circuit has certified a nationwide***

23  ***unjust enrichment class since Mazza*** and Plaintiffs have failed to show how this

24  Court could manage a nationwide class where fifty varying states' laws would apply,

25  as required under Rule 23(b)(3).") (emphasis added).

26         Such variances in state law would certainly be material in this case.  For

27  example, Plaintiffs have at least pleaded an adequate remedy at law in the form of

28  their claims under the CLRA, UCL and FAL that would preclude relief under an

1  unjust enrichment theory in certain states, but not others.  *Compare Sonner v. Premier*

2  *Nutrition Corp.*, 971 F.3d 834, 844-45 (9th Cir. 2020) (dismissing claim for

3  restitution given adequate damages remedy under CLRA and UCL) *with Williams v.*

4  *Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998) (claim for unjust

5  enrichment not barred by the existence of an adequate remedy at law).  Additionally,

6  some states permit a plaintiff to seek restitution of a benefit conferred on the

7  defendant by a third party, whereas others limit the remedy to only benefits that the

8  plaintiff has conferred directly on the defendant.  *Compare, e.g., Arlandson v. Hartz*

9  *Mountain Corp.,* 792 F. Supp. 2d 691, 711 (D. N.J. 2011) (plaintiff only) with

10  *Thompson v. Bayer Corp.,* No. 4:07CV00017, 2009 WL 362982, at \*5 (E.D. Ark.

11  Feb. 12, 2009) (third party).  In this case, Plaintiffs allege that Omaze was unjustly

12  enriched by keeping monies which the donors intended to go 100% to charity,

13  suggesting any alleged enrichment came from the charity and not the donors.  *See*

14  *also generally In re Actiq Sales & Mktg. Pracs. Litig.*, 307 F.R.D. 150, 163 (E.D. Pa.

15  2015) (conducting exhaustive comparison of state unjust enrichment laws, and

16  refusing to certify nationwide class).

17      *3.  Conflicts in fraud claims.*

18     Courts have rejected nationwide classes of common-law fraud claimants for the

19  same reason.  In *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096 (C.D. Cal. 2012), the

20  court observed, for example, that "[n]ineteen states require scienter for an intentional

21  misrepresentation claim . . . whereas, thirty-one states do not have a scienter

22  requirement." *Id.* at 1101.  As already explained, the scienter requirement creates a

23  material difference in the choice of law analysis, particularly where Plaintiffs allege

24  to have relied on misleading disclosures that under certain states' laws they would

25  have to prove were specifically designed to mislead. *Id.*; *Mazza,* 666 F.3d at 591;

26  *Davison*, 2015 WL 3970502, at \*2.  As another example, the *Gianino* court observed

27  that some states permit a fraud plaintiff to recover expectation or "benefit of the

28  bargain" damages, while others limit the plaintiff to recovering reliance damages.

846 F. Supp. 2d at 1101-02.  In this case, an expectation theory of damages could inquire into how Plaintiffs' chances of winning a prize in an Omaze sweepstakes might have been different had they not been allegedly misled, but a reliance theory would limit them to seeking restitution of benefits conferred.  *See also Larsen v. Vizio, Inc.,* No. SACV1401865CJCJCGX, 2015 WL 13655757, at *3 (C.D. Cal. Apr. 21, 2015) (citing *Gianino* and *Mazza* to dismiss nationwide class allegations under a common-law fraud theory at the pleadings stage).

Given the foregoing, Plaintiffs cannot plausibly allege a rational basis upon which to litigate any of their five claims on behalf of a nationwide class.

### 4. *Conflicts on how to enforce class waivers.*

Additionally, the conflict created by different states' approaches to the enforceability of the Class Waiver constitutes another reason that the Court cannot apply California law to the claims of the putative nationwide class, rendering the nationwide class unmanageable and inappropriate under *Mazza*.

### i. Different states enforce class waivers differently.

Plaintiffs—and indeed all putative class members—were presented with the Class Waiver in every single version of the Official Rules applicable when Plaintiffs and the putative class members entered the online sweepstakes that are the subject of this action.  That Class Waiver stated in no uncertain terms that Plaintiffs agreed their purported claims "shall be resolved individually, without resort to any form of class action" or, in later versions of the Official Rules, that their purported "CLAIMS WILL BE RESOLVED INDIVIDUALLY, NOT AS A PLAINTIFF OR CLASS REPRESENTATIVE, MEMBER OF, OR OTHERWISE ON BEHALF OF OTHERS IN ANY PURPOSED CLASS, COLLECTIVE, OR REPRESENTATIVE PROCEEDING, AND NOT THROUGH ANY CLASS ACTION."  Segal Decl. (ECF No. 17), Ex. 9 at ¶ 8, Ex. 2 at ¶ 13 (capitalization in original).

Federal courts sitting in diversity generally "apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.,* 763 F.3d

1171, 1175 (9th Cir. 2014). "The internet has 'not fundamentally changed the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 483 (9th Cir. 2020) (internal citations omitted). In the analogous context of arbitration agreements, it has been held that "[m]utual assent does not require that the offeree have actual notice of the terms of an arbitration agreement. Instead, an offeree is bound by an arbitration clause if a reasonably prudent Internet consumer would be put on inquiry notice of the agreement's existence and contents." *Id.* (internal quotation marks omitted).

The Class Waiver in this case was not an arbitration clause or agreement,[3] but is still governed by the same rules applicable to the formation of contracts, and should be enforced. Indeed, at all relevant times Omaze had placed a conspicuous link to the Official Rules at the bottom of every webpage within its site, which could be accessed by any individual user interested in understanding the rules of the sweepstakes which he or she was entering. Segal Decl. (ECF No. 17), ¶ 6, Exs. 2-9. And unlike other cases where plaintiffs have argued that links at the bottom of a page were not conspicuous enough to put them on inquiry notice of the contract language, here Plaintiffs also confirm that they "rel[ied] on" the Experience Pages when entering the sweepstakes. FAC (ECF No. 70) at ¶¶ 178, 198. The Experience Pages, of course, reflected the Experience Rules, which in turn contained multiple conspicuous links to the Official Rules. *Id.*, Ex. D; *see also* Segal Decl. (ECF No. 17), Ex. 1. Nor could Plaintiffs have reasonably missed the Experience Rules when visiting the Experience

---

[3] That said, certain members of the putative class **were** subject to a highly-conspicuous mandatory arbitration clause that went into effect January 5, 2021. Segal Decl. (ECF No. 17), Ex. 2 at Preamble & ¶ 13. These putative class members were also soon required to provide their express assent to the Official Rules—including that mandatory arbitration clause along with the Class Waiver—before tendering any money at all. *Id.*, Ex. 26. This type of "sign-up" agreement has been more than sufficient for courts to find that an enforceable contract has been formed. *E.g.*, *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585-87 (N.D. Cal. 2020).

1  Pages, as the Experience Rules were demarcated by a large-font, bolded banner

2  stating: "**stuff our lawyers want you to read**."  *Id.* (emphasis in original).

3      Plaintiffs' FAC alleges that they treated Omaze's sweepstakes not as charitable

4  fundraising events, but as business transactions in which Plaintiffs expected to obtain

5  the highest possible chance of winning.  *See, e.g.*, FAC (ECF No. 70) at ¶¶ 185-86,

6  203-04, 216, 220 (alleging that Plaintiffs "would not have purchased the sweepstakes

7  entries, or would have purchased fewer of them," if they believed they were at a

8  competitive disadvantage in the sweepstakes drawing).  A reasonably prudent Internet

9  consumer—particularly one treating an Omaze sweepstakes like this sort of business

10  transaction—visiting the Experience Page that Plaintiffs admit they "rel[ied] on"

11  would have seen and should have known he or she was going to be bound by the

12  prominently-labeled rules applicable to the sweepstakes.

13      Indeed, courts routinely find it objectively unreasonable in this day and age to

14  enter a sweepstakes *without* understanding there are rules governing the sweepstakes.

15  *See, e.g.*, *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 119

16  (E.D.N.Y. 2020) (rejecting plaintiffs' cite to product labeling cases in an attempt to

17  avoid sweepstakes terms, as "it is much more reasonable to expect a contest

18  participant to observe the official rules of that contest than to expect a consumer to

19  read the obscured fine print on the back of a tangible good"). *Derbaremdiker v.*

20  *Applebee's Int'l, Inc.*, No. 12-CV-01058 KAM, 2012 WL 4482057, at *6 (E.D.N.Y.

21  Sept. 26, 2012) ("[A] reasonable consumer that read the Official Rules as directed

22  would not have been misled by the statements on the receipt.").

23      And it is of no moment that Plaintiffs may have had to click an additional,

24  conspicuously-labeled link from the Experience Page to view the Official Rules, as

25  "clicking the hyperlinked phrase is the twenty-first century equivalent of turning over

26  the cruise ticket" to read the fine print.  *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825,

27  831 (S.D.N.Y. 2020).  Plaintiffs are thus bound by the Official Rules regardless of

28  whether they actually clicked the links or simply failed to do so due to a lack of

reasonable prudence.  *See id.* ("Whether Feld actually clicked on the hyperlinked terms to read the TOS or the Privacy Policy is immaterial; what matters is that notice of these terms was reasonably conspicuous."); *Derbaremdiker*, 2012 WL 4482057, at *6 (rejecting plaintiff's argument "that defendant should have required an entrant to review the Official Rules and accept its terms and conditions prior to entering the Sweepstakes (e.g., by clicking a box)" because he "failed to point to any legal obligation requiring such a burden on a Sweepstakes sponsor or entrant.").

However, California is among a minority of states that may, in certain circumstances, decline to enforce the Class Waiver even though Plaintiffs clearly agreed to it.  For example, there is an anti-waiver provision within the CLRA itself. Cal. Civ. Code § 1751.  The California Supreme Court has also held that waivers of the right to seek relief on a classwide basis may be unenforceable in other contexts. *Discover Bank v. Superior Ct.*, 36 Cal. 4th 148, 162 (2005).[4]  By contrast, the majority of foreign states would uphold such a contractual waiver under freedom-of-contract principles.  *E.g., U1it4Less, Inc. v. FedEx Corp.*, No. 11-CV-1713 KBF, 2015 WL 3916247, at *5 (S.D.N.Y. June 25, 2015); *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. 4th DCA 2005); *Palmer v. Convergys Corp.*, No. 7:10-CV-145 HL, 2012 WL 425256, at *2 (M.D. Ga. Feb. 9, 2012).  Therefore, an individual residing in one of these states would be barred by jurisdictional law from participating in a class action against Omaze, and permitting that individual to join the instant class would significantly impair the interest of his or her home state in enforcing the private right to freedom of contract.  The governmental interest analysis required by *Mazza* therefore requires that all of Plaintiffs' allegations on behalf of individuals from other states must be stricken for this reason alone.

---

[4] The Class Waiver in the most recent version of the Official Rules, coupled as it is with a mandatory arbitration clause, is enforceable in ***all*** states under the authority of *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352, 131 S. Ct. 1740, 1753 (2011) and *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 51, 136 S. Ct. 463, 466 (2015).  As previously stated, therefore, the putative class cannot contain any individual entering a sweepstakes after January 5, 2021.

1          ii.     The choice-of-law provision has no ultimate impact.

2          As previously referenced, Plaintiffs have taken the position that the California

3    choice-of-law provision in the Official Rules should permit them to state claims on

4    behalf of a nationwide class under California law and sidestep the Class Waiver.  *See,*

5    *e.g.*, Opp. to Mtn. to Strike (ECF No. 27) at 1.  At the outset, Plaintiffs may not

6    advance such a position when they have ***explicitly*** refused to state or allege whether

7    they saw or reasonably should have seen the Official Rules when entering, and

8    therefore whether the Official Rules are enforceable.  *See id.* at n.1 ("Plaintiffs do not

9    concede that any of Omaze's Official Rules and/or Terms of Use are enforceable.").

10   Yet the choice-of-law provision ultimately makes no difference to the question of

11   whether Plaintiffs may represent a nationwide class.  They cannot.

12         If the Official Rules were to be deemed unenforceable because Plaintiffs had no

13   actual or inquiry notice of them when entering the sweepstakes, for example, the

14   nationwide class allegations must be stricken because the California choice-of-law

15   provision therein would be similarly unenforceable.  The question would be limited to

16   whether Plaintiffs may state claims on behalf of putative class members in other states

17   under California's consumer-protection statutes or doctrines of unjust enrichment and

18   fraud/deceit.  *Mazza*, and the district court cases applying *Mazza* at the pleadings

19   stage, answer that question in the negative.  *See infra* Parts. IV.B.1-3.

20         Alternately, if Plaintiffs were on actual or inquiry notice of the Official Rules,

21   this would merely necessitate the application of a two-part test to determine whether

22   the choice-of-law provision permits nationwide class treatment: (i) "the Court must

23   first determine whether the party advocating enforcement of the clause (here,

24   plaintiffs) has shown that the various claims of putative class members fall within its

25   scope;" and (ii) if so, "next determine whether the choice-of-law clause is

26   enforceable" by "apply[ing] the principles set forth in Restatement section 187."

27   *Estrella v. Freedom Fin. Network, LLC*, No. C 09-03156 SI, 2010 WL 2231790, at

28   *4-5 (N.D. Cal. June 2, 2010).  Neither element of this test is satisfied here.

1        First, the Official Rules applicable through June 2017 stated that "[t]he

2  Promotion and these Official Rules are governed by and shall be construed in

3  accordance with the substantive laws of the State of California *applicable to contracts*

4  *made and performed entirely in California and where the relevant contacts are with*

5  *each state*." Segal Decl. (ECF No. 17), Exs. 7-9 (emphasis added).  Plaintiffs submit

6  no evidence or allegation showing that the tort claims belonging to putative class

7  members in this case fall within the scope of this choice-of-law clause, which is their

8  burden.  In fact, as discussed above, putative class members in other states have no

9  particular contact with California whatsoever, nor have they pled that they entered

10  into any California contracts.  They entered sweepstakes and, at least according to

11  Plaintiffs, purportedly suffered injury in the states of their own residence.  Thus, the

12  choice-of-law provision does not apply to these claims.

13        Second, in any event and even as to later versions of the Official Rules, it is

14  also Plaintiffs' burden to show that the choice-of-law provision is enforceable when

15  applied to their attempt to assert claims on behalf of a nationwide class.  Under § 187

16  of the Restatement, choice-of-law clauses cannot be enforced to the extent that

17  "application of the law of the chosen state would be contrary to a ***fundamental*** policy

18  of a state which has a materially greater interest than the chosen state in the

19  determination of the particular issue and which, under the rule of § 188, would be the

20  state of the applicable law in the absence of an effective choice of law by the parties."

21  Restatement (Second) of Conflicts of Law, § 187(2)(b) (emphasis added).  This

22  inquiry looks specifically to "the fundamental policy . . . of the state where each

23  putative plaintiff resides that would otherwise govern the parties' dispute." *Estrella,*

24  *2010 WL 2231790, at \*5*; *see also* Restatement (Second) of Conflict of Laws § 188

25  (applying the law of the state with "the most significant relationship to the transaction

26  and the parties," and defining several factors for this determination including the

27  place of contracting, the place of negotiation of the contract, and the place of

28  performance).

**MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC**

1        Thus, to the extent that Plaintiffs may contend that the California choice-of-law

2   provision renders the Class Waiver unenforceable even as to putative class members

3   residing out-of-state, Plaintiffs are wrong.  The states that have elected to enforce

4   class waivers have determined as a matter of ***fundamental*** state law and policy that

5   the right to contract freely should override governmental restrictions upon that right.

6   *See, e.g.*, *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No.

7   5:05CV260 OCGRJ, 2007 WL 1114045, at *5 (M.D. Fla. Apr. 12, 2007)* ("One of the

8   fundamental policies recognized in Florida is the right to freedom of contract between

9   parties."); *see also* *Nedlloyd Lines v. Superior Ct.*, 3 Cal. 4th 459, 468 (1992)

10  (distinguishing between a "government regulatory policy designed to restrict freedom

11  of contract"—which would implicate fundamental public policy—and the mere

12  difference between states in electing to recognize a claim for breach of the implied

13  covenant of good faith and fair dealing); *cf. Lane v. Wells Fargo Bank N.A.*, No. C

14  12-04026 WHA, 2013 WL 269133, at *4 (N.D. Cal. Jan. 24, 2013)* ("Because . . .

15  plaintiffs do not contend that [application of] California law would preclude freedom

16  of contract in this context, the choice-of-law provision is enforceable.").  Thus, even

17  if California law might invalidate the Class Waiver, applying a California choice-of-

18  law clause would override those foreign states' fundamental policy goals by imposing

19  restrictions on the manner in which their residents may contract with others.

20  Plaintiffs have made no showing to the contrary.

21       Accordingly, because the Class Waiver in this case would be enforceable as to

22  out-of-state putative class members even if the California choice-of-law provision

23  were otherwise applicable in this case,[5] those out-of-state putative class members

24  could not be represented by Plaintiffs in a class-action capacity and the Court would

25  nevertheless have to strike the nationwide class allegations.

26

27  _____

28  [5] The choice-of-law provision may nevertheless apply in other contexts not implicated
    by this motion; e.g., where "fundamental" state policies are not implicated.

**MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS FROM FAC**

## C.     The Court Should Not Wait Until Class Certification to Strike Plaintiffs' Nationwide Class Allegations

Nor should the Court wait for Plaintiffs to prepare and file a class certification motion to address the class allegations, as the defect is clear based on not only persuasive but ***binding*** legal precedent from the Ninth Circuit.  Declining to strike the nationwide class claims ***now***, as opposed to considering them later in this case, would introduce costs and delays into this litigation for no countervailing benefit, as other courts have persuasively explained.  For example:

> There are cases in which further development of the factual record is not reasonably likely to materially impact the choice of law determination.  In such cases, it is not clear that deferring choice of law analysis until class certification is either warranted by the inquiry's fact-specific nature or beneficial to plaintiffs in any meaningful way.  Two recent cases from this district exemplify this point.    In *Werdebaugh v. Blue Diamond Growers*, the court declined at the pleading phase to apply the governmental interest test to CLRA, UCL, and FAL claims asserted on behalf of a national class, concluding that application of the test would be premature.  At class certification, however, the court applied the test and concluded, with minimal fact-specific analysis, that a national class could not be certified in light of *Mazza*.  Likewise, in *Brazil v. Dole Food Co., Inc.,* the court deferred until class certification to consider whether California state-law claims could be asserted on behalf of nonresident class members, but then held that *Mazza* precluded certification of a national class.   As in *Blue Diamond,* the court was able to reach this conclusion with minimal fact-specific analysis.

*Frenzel*, 76 F. Supp. 3d at 1008 (cleaned up).

The Court should follow this reasoning and strike the nationwide class allegations at the pleadings stage.

## V.   <u>CONCLUSION</u>

Plaintiffs' attempt to assert California law claims on behalf of a nationwide class of Omaze donors fails because those donors are subject to the laws of their own states, and numerous district courts have pointed out that waiting to resolve that issue

1  until class certification serves no purpose other than to multiply proceedings, costs

2  and delay for the parties and the Court.

3       The Court should therefore grant this Motion and strike Plaintiffs' nationwide

4  class allegations.

5

6  Dated:  January 12, 2022       WARGO & FRENCH LLP

7                           By:  */s Jeff Williams*

8                              JEFFREY N. WILLIAMS
                            NICOLA A. GELORMINO

9                      Attorneys for Defendant Omaze, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28