WARGO & FRENCH LLP
JEFFREY N. WILLIAMS (SBN 274008)
NICOLA A. GELORMINO (admitted *pro hac vice*)
601 S. Figueroa St., Suite 4625
Los Angeles, CA 90017
Tel: (310) 853-6300
Fax: (310) 853-6333
Attorneys for Defendant
OMAZE, INC.
jwilliams@wargofrench.com
ngelormino@wargofrench.com


GUTRIDE SAFIER LLP
SETH A. SAFIER (SBN 197427)
ANTHONY PATEK (SBN 228964)
100 Pine Street, Suite 1250
San Francisco, CA 94111
TEL: (415) 336-6545
FAX: (415) 449-6469
Attorneys for Plaintiff
seth@gutridesafier.com
anthony@gutridesafier.com

# UNITED STATES DISTRICT COURT FOR THE

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREAS KNÜTTEL, MATTHEW JURANEK, AND ADRIANA CARLIN as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OMAZE, INC.,<br><br>Defendant. | Case No. 2:21-cv-9034 SB (PVC)<br><br><u>STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION</u> |

**1. PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, this

1

Court's Standing Order, and any other applicable orders and rules.[1]

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order, the Federal Rules of Civil Procedure, and the Local Rules of this Court.

## 3. LIAISON

The parties have identified, or will identify within 7 days of the Case Management Conference, liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) The Parties agree that preservation of potentially relevant data will be reasonable and proportional to what is at issue in the case. Each Party has taken and shall continue to take reasonable steps to preserve relevant data including, but not limited to, circulation of a litigation hold notice to those employees or other individuals with potentially responsive data for whom a Party has a right to access electronic documents. Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back up and archive data outside of the parties' respective litigation holds in place.

In general, the Parties agree that ESI created or received before April 15, 2017 and after January 5, 2021 is not generally subject to preservation and harvesting for all discovery purposes, but this Order does not relieve a party of its obligations to

---

[1] By agreeing to the entry of this Stipulated ESI Order, Omaze does not waive and hereby expressly reserves its objections and positions as to the timing and scope of discovery in this case, specifically including ESI, as set forth in its Motion to Stay and/or Bifurcate (ECF No. 83) and other discovery-related documents and communications in this case. This Stipulated ESI Order is simply meant to govern ESI-related discovery in this case in the event, and to the extent, the Court determines it is necessary and proportional to the needs of this case.

2

      preserve and harvest ESI created before April 15, 2017 and after January 5, 2021 if the party is aware or on notice of ESI that is likely to contain relevant and discoverable information and if an efficient method might be identified to harvest such ESI relating to certain issues in this case;

b) The parties have exchanged, or will exchange within 14 days of entry of this Stipulated Order, (i) a list of the types of ESI they believe should be preserved, including non-custodial sources, *e.g.*, sharepoints, databases, e-mail servers, shared drives, backup tapes, etc., (ii) the number and identity of custodians, including the general job titles or descriptions of custodians, for whom they believe ESI should be preserved, *e.g.*, "Senior Marketing Manager," "Lead Product Manager," and "Director – Customer Service." The Parties shall meet and confer in order to add, remove, or modify custodians, data sources, and search/harvest methodologies as reasonably necessary.;

c) The parties will agree on the number of custodians per party for whom ESI will be preserved;

d) These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved but not searched, reviewed, or produced: backup media of defendant(s)' computer systems, systems and databases no longer in use that cannot be accessed;

e) The Parties agree to meet and confer about any sources of data (custodial and non-custodial) in addition to those identified under paragraph 4(b) and shall take into account reasonableness, relevance, proportionality, undue burden and reasonable accessibility in attempting to reach an agreement.

f) In addition to the agreements above, the parties agree data from these sources (a) could contain relevant information but (b) under the proportionality factors, should not be preserved: currently none.

5. **SEARCH**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI, to identify ESI that is subject to discovery, and filter out ESI that is not subject to discovery. Where a producing party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the requesting party that it intends to employ to search for certain relevant and responsive documents and the Parties agree to meet and confer on reasonable changes.

6. **PRODUCTION FORMATS**

With the exception of files that cannot be converted to image files, the Parties shall produce all relevant, responsive, and non-privileged ESI as Bates-stamped single-page 1-bit TIFF

images with a DAT load file that enables the document to be uploaded and viewed using standard litigation support software in accordance with the provisions below. Unless excepted below, single page, 1-bit, black and white Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Where the TIFF image is unreadable or has materially degraded the quality of the original, the receiving party may request that the producing party provide a higher quality TIFF image or the native or original file, which request shall not be unreasonably withheld.

The Parties acknowledge that there may be subsequent instances where potential modification to production formats may be warranted, specifically including but not limited to a party's system requirements/capabilities or those relating to an ESI vendor. Should such an instance arise, the Parties agree to meet and confer about modifications to production formats and use their reasonable best efforts to reach an agreement. If a party requests such a meet and confer, the Parties will meet and confer within seven days.

a. *Production Media*. The Parties shall produce documents in an encrypted format through electronic means, such as external hard drives, secure file sharing methods (*e.g.*, FTP), or readily accessible computer or electronic media (*e.g.*, CDs, DVDs) (collectively, "Production Media"), with explicit decryption instructions. Productions shall have the following four directories: (1) IMAGES for the images; (2) DATA for the .dat and .opt files; (3) TEXT for the extracted text/OCR files; and (4) NATIVES for any native Excel, multi-media, or other files that cannot be understood reasonably unless displayed in native format. The producing party shall identify: (a) the Responding Party's name; (b) the production date; and (c) the Bates Number range of the materials contained on the Production Media.

b. *Color*. The Parties are not required to produce images or other documents in color. However, if the requesting party believes it is necessary to produce certain images in color to understand those images, the requesting party shall confer with the producing party as to the burden and necessity of re-producing the images in color.

c.  *Unique IDs*. Images shall be produced using a unique file name that will be the Bates number of that page (*e.g.*, ABC000001.TIFF). The Bates number must appear on the face of the image and not obliterate, conceal, or interfere with any information from the source document. Native files shall be produced using a name that will bear the production number and any confidentiality designation as well as the original file name (e.g., ABC000002_Confidential_OriginalFilename.xls).

d.  *Parent-Child Relationships*. Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment.

e.  *Redactions*. If the Parties are redacting information from a page, they shall electronically "burn" the word "Redacted" onto the page or otherwise clearly indicate a redaction at or reasonably near to the location of the redaction(s), as set forth in the stipulated Protective Order in this matter. If documents that the Parties have agreed to produce in native format need to be redacted, the Parties agree to meet and confer in good faith on how to best produce the documents so that proper formatting and usability are maintained.

f.  *Confidentiality Designation*. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order entered in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder.

g.  *Metadata Fields*. The Parties shall provide the system generated and metadata fields (the "Production Fields") substantially similar to those set forth in **Exhibit A**. To the extent individual metadata fields do not exist for specific ESI, or are impossible or unreasonably difficult to collect and produce due to technical limitations, the Parties agree that the Producing Party may produce without those individual metadata fields, or may substitute an alternate means of

supplying the data required by **Exhibit A**. The production of such ESI with these limitations shall not be considered a violation of this order or be used as a basis for a claim as to spoliation.

  h. *Native Format*. The Responding Party shall produce spreadsheets (*e.g.*, Excel), and any other materials not readily convertible to TIFF format (*e.g.* three-dimensional design files) in native format. To the extent that they are produced in this action, audio, video, and multimedia files will be produced in native format. If a native file originally had track changes, comments, or other collaborative change features turned on, the .TIF file will display those changes in the converted image file. Native files shall be produced with a link in the NATIVEPATH field, along with extracted text (where extracted text is available) and applicable metadata fields set forth in **Exhibit A**. For each native file produced, the production will include a *.tiff image slipsheet indicating the production number of the native file and the confidentiality designation and stating, "File Provided Natively" (or substantially similar). Native files will be produced in a separate folder on the production media. TIFF images of e-mail messages should include the BCC line. Upon request from the receiving party that any files be produced in native format (identified by Bates number), the Parties agree to meet and confer in good faith concerning such requests. A request for such production shall not be unreasonably denied. The Parties agree to meet and confer regarding a protocol for use of native files at depositions, hearings, or trial.

  i. *Text Files*. For each produced document, a document-level text file shall be provided in addition to the image files (TIFFs). The text of native files should be extracted directly from the native file and each text file will be named using its corresponding beginning bates number (*e.g.*, ABC000001.TXT). For ESI with redacted text, a commercially acceptable technology for Optical Character Recognition ("OCR") shall be used for all scanned, hard copy documents with redactions.

  j. *Physical/Hard Copy Documents*. Nothing herein shall relieve the Parties of any obligations they may have to search for responsive Documents in hard copy form. The Parties shall produce responsive documents that exist solely in physical hard-copy format, if any, following this ESI Stipulation. The Parties will meet and confer to address instances of undue

6

burden and will work to negotiate an appropriate solution.

k.  *Databases and Other Structured Data*.  The Parties shall meet and confer regarding the production format and scope of data contained in enterprise database or database management system (*e.g.*, Oracle, SQL server, DB2), including the types of information stored in the database(s), the types of reports that can be generated from or for the data, whether there are existing and reasonably available reports that include the information, and whether the receiving Party will need any information in native form in order to ensure that any information produced is reasonably usable by the receiving party and that its production does not impose an undue burden.  In meeting and conferring on this issue, the parties must consider the burden and proportionality associated with productions of data stored in any database.  To avoid doubt, information will be considered reasonably usable when produced using formats including, but not limited to: CSV, tab-delimited text, Microsoft Excel, or Microsoft Access.

l.  *Duplicates*.  The Responding Party may use software to identify duplicate documents that are in files of individual or multiple Production Custodians.  To the extent there are duplicate documents, the Responding Party need generally only produce a single copy of a responsive document. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level only).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. If the Receiving Party requests duplicates or overlay files from the Producing Party, the parties agree to meet and confer to discuss the basis, reasonableness, and proportionality of the request.

m.  *NIST*.  The Parties further agree that each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

n.  *Email Threading*.  Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email")

7

and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

7. **PHASING**

The Parties agree to meet and confer concerning whether the production of responsive ESI should occur in phases. Excluded from the scope of this agreement are bifurcation and stays of discovery; this paragraph is not intended to address either of those issues.

8. **DOCUMENTS PROTECTED FROM DISCOVERY**

   a) Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

   b) The producing party shall also provide a privilege log, containing fields with information to be agreed upon by the Parties in a separate agreement. In the event no such agreement is reached, the privilege log shall contain the information required by law to support the claim of privilege.

   c) Communications involving a party's counsel (including all attorneys, staff or other personnel) that post-date the submission of Plaintiffs' claim to Defendant on December 3, 2020 need not be placed on a privilege log. Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**9. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record. Pursuant to Local Rule 5-4.3.4, submitting counsel hereby attests that all signatories listed below on whose behalf this stipulation is submitted concur in and have authorized this filing.

| | |
|---|---|
| Dated: February 1, 2022 | /s/Anthony J. Patek/ |
| | Counsel for Plaintiff<br>GUTRIDE SAFIER LLP<br>SETH A. SAFIER (SBN 197427)<br>ANTHONY PATEK (SBN 228964)<br>100 Pine Street, Suite 1250<br>San Francisco, CA 94111<br>TEL: (415) 336-6545<br>FAX: (415) 449-6469 |
| Dated: February 1, 2022 | /s/Jeffrey N. Williams/ |
| | Counsel for Defendant<br>WARGO & FRENCH LLP<br>JEFFREY N. WILLIAMS (SBN 274008)<br>601 S. FIGUEROA ST., SUITE 4625<br>LOS ANGELES, CA 90017<br>TEL: (310) 853-6300<br>FAX: (310) 853-6333 |

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

UNITED STATES DISTRICT JUDGE

**Exhibit A**
**Production Fields**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| BEGDOC | Bates number assigned to the first page of the document. |
| ENDDOC | Bates number assigned to the last page of the document. |
| BEGATTACH | Bates number assigned to the first page of the parent document in a document family (i.e., should be the same as BEGDOC of the parent document, or PARENTDOC). |
| ENDATTACH | Bates number assigned to the last page of the last child document in a document family (i.e., should be the same as ENDDOC of the last child document). |
| PARENTDOC | BEGDOC of parent document. |
| CHILDDOCS | List of BEGDOCs of all child documents, delimited by ";" when field has multiple values. |
| NATIVEFILE | Relative file path of the native file on the production media, if any. |
| CUSTODIAN | Owner of the document or file. |
| FROM | Sender of the email. |
| TO | All to: members or recipients, delimited by ";" when field has multiple values. |
| CC | All cc: members or recipients, delimited by ";" when field has multiple values. |
| BCC | All bcc: members or recipients, delimited by ";" when field has multiple values. |
| SUBJECT | Subject line of the email. |
| DATERCVD | Date that an email was received. |
| TIMERCVD | Time that an email was received. |
| DATESENT | Date that an email was sent. |
| TIMESENT | Time that an email was sent. |
| ATTACHMENTS | List of filenames of all attachments, delimited by ";" when field has multiple values. |
| FILENAME | Original filename of the produced document. |
| DOCEXT | Original file extension. |
| DOCTYPE | Name of the program that created the produced document. |
| TITLE | Document title (if entered). |
| AUTHOR | Name of the document author. |
| DATECREATED | Date that a document was created. |
| TIMECREATED | Time that a document was created. |
| DATEMOD | Date that a document was last modified. |
| TIMEMOD | Time that a document was last modified. |